IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
IN COURT
CHARLOTTE, N. C.
MAR 6 2007
U. S. DISTRICT COURT
W. DIST. OF N. C.

| | |
|---|---|
| In re: | Chapter 7 |
| RFS ECUSTA INC. and<br>RFS US INC., | Case Nos. 03-10358 (GRH)<br>and 03-10360 (GRH) |
| Debtors. | (Jointly Administered) |
| LANGDON M. COOPER,<br>as Chapter 7 Trustee for the estates of<br>RFS ECUSTA INC. AND RFS US INC., | Case No. 3:05-cv-214-MU |
| Plaintiff, | Adv. Pro. No. 04-3233 (GRH) |
| v. | |
| NATHU RAM PURI, et al., | |
| Defendants. | |
| LANGDON M. COOPER,<br>as Chapter 7 Trustee for the estates of<br>RFS ECUSTA INC. AND RFS US INC., | Case No. 3:05-cv-213-MU |
| Plaintiff, | Adv. Pro. No. 04-3232 (GRH) |
| v. | |
| P.H. GLATFELTER COMPANY, et al., | |
| Defendants. | |

**STIPULATION AND ORDER REGARDING COMPLIANCE WITH TEMPORARY RESTRAINING ORDER AND ORDER OF ATTACHMENT AND NOTICE OF LEVY IN GARNISHMENT PROCEEDING**

This Stipulation and Order (this "Stipulation") is made as of March 6, 2007 by and between Cenveo, Inc. ("Cenveo") and Langdon M. Cooper, as Chapter 7 Trustee (the "Trustee" and together with Cenveo, the "Parties") for the estates of RFS Ecusta Inc. and RFS US Inc. (collectively, the "Debtors").

NY 1136394_9.DOC

WHEREAS, by Ex Parte Motion of Trustee dated February 21, 2007, the United States District Court for the Western District of North Carolina, Charlotte Division (the "District Court") entered on February 22, 2002 a Temporary Restraining Order and Order of Attachment (together with subsequent injunctions related thereto, the "TRO") against Purico (IOM) Limited ("Purico (IOM)") and Nathu Ram Puri ("Puri", and together with Purico (IOM), the "Shareholders"). A copy of the TRO is attached as Exhibit A;

WHEREAS, the Shareholders are parties to this action, subject to the jurisdiction of the District Court, and have received notice of the TRO;

WHEREAS, the Trustee on or about February 22, 2007 served a Notice of Levy in Garnishment Proceedings ("Notice of Levy") upon Cadmus Communications Corporation ("Cadmus"). A copy of the Notice of Levy is attached as Exhibit B;

WHEREAS, Cenveo and Cadmus are parties to that certain Agreement of Merger dated as of December 26, 2006 (the "Agreement of Merger") among Cenveo, Mouse Acquisition Corp., an indirect wholly-owned subsidiary of Cenveo ("Merger Sub"), and Cadmus, which, among other things, contemplates the merger ("Merger") of Merger Sub into Cadmus and provides for the payment of consideration to (i) the Cadmus shareholders (the "Merger Consideration") for the stock of Cadmus owned by them to be disbursed by The Bank of New York, as the paying agent for Cenveo, ("Paying Agent") and (ii) the holders of options to purchase Cadmus stock to be disbursed by Cadmus as the corporation surviving the Merger;

WHEREAS, Purico (IOM) is party to that certain Voting Agreement and Irrevocable Proxy dated as of December 26, 2006 ("Voting Agreement") among Cenveo, Clary Limited, Purico (IOM), Melham US Inc. and Bruce V. Thomas, which, among other things, requires Purico (IOM) to vote in favor of the Merger;

WHEREAS, pursuant to the Voting Agreement, Purico (IOM) is the owner of 1,143,324 shares of Cadmus common stock (the "Purico Shares") and, as set forth in the definitive proxy statement distributed to the Cadmus shareholders prior to the date of this Stipulation in connection with the Cadmus shareholder meeting to be held on March 7, 2007 to vote on the Merger, Puri holds options to purchase 6,000 shares of Cadmus common stock (the "Puri Options");

WHEREAS, 421,924 of the Purico Shares are registered in the name of Purico (IOM) (the "Registered Shares");

WHEREAS, the District Court has scheduled a hearing for 2:00 p.m., March 7, 2007, to consider the imposition of a preliminary injunction in connection with the Trustee's request for the TRO (the "Preliminary Injunction Hearing");

WHEREAS, the District Court has moved the Preliminary Injunction Hearing to 1:30 p.m., March 6, 2007;

WHEREAS, on March 5, 2007, Cadmus filed the Motion of Cadmus Communications Corporation for Dissolution or Modifcation of Temporary Restraining Order and Order of Attachment and Granting Related Relief ("Motion to Dissolve TRO");

WHEREAS, on March 5, 2007, the District Court entered its Order Expediting Hearing on Motion for Dissolution or Modification of Temporary Restraining Order and Order of Attachement and Granting Related Relief, scheduling a hearing for 1:30 p.m., March 6, 2007 on the Motion to Dissolve TRO; and

WHEREAS due and proper notice of the TRO, the Preliminary Injunction Hearing, and the Motion to Dissolve TRO has been given, including, but not limited to, due and proper notice to the Shareholders.

NOW, THEREFORE, in consideration of the foregoing and the terms, conditions, agreements, representations and covenants set forth herein, and subject to approval by the District Court as indicated by the signature of the District Court below, the Parties agree as follows:

1. <u>Compliance with TRO and Notice of Levy</u>. The following actions constitute full compliance by Cenveo, Cadmus and the Paying Agent with the TRO and Notice of Levy (without any admission by Cenveo that it is subject to the TRO or the Notice of Levy):

(a) Promptly following approval of this Stipulation by the District Court (and in any event prior to consummation of the Merger), Cenveo shall: (i) instruct the Paying Agent in writing to transfer the Merger Consideration payable to Purico (IOM) with respect to the Registered Shares ($10,442,619) (the "<u>Share Consideration</u>") to the registry of the District Court (the "<u>Court Registry</u>") pursuant to wire transfer instructions to be provided by the Trustee (such letter shall instruct the Paying Agent to make the wire transfer to the Court Registry concurrently with the transfer to the Depository Trust Company of the Merger Consideration with respect to shares held in "street name" at brokerage accounts or at such later time as the Trustee shall provide the Paying Agent with such wire transfer instructions); <u>provided, however</u>, that the Share Consideration shall not be disbursed from the Court Registry to any individual or entity unless Cenveo shall have received: (A) a Disbursement Order (as defined below); (B) a United States Treasury Department Form W-9 (or other applicable form or statement specified by Treasury Department regulations) that is properly completed and executed by the individual or entity receiving such proceeds; and (C) either an Additional Order (as defined below) or one or more certificates representing the Registered Shares and a letter of transmittal (in the form required by the Agreement of Merger) that is duly in accordance with the instructions contained therein; and

(ii) instruct the person responsible for processing payments under the Cadmus payroll processing system that any amounts that would, pursuant to the Agreement of Merger, be paid to Puri in respect of the Puri Options (the "Option Consideration"), will instead be paid into the Court Registry; provided, however, that the Option Consideration shall not be disbursed from the Court Registry to any individual or entity unless Cenveo shall have received: (A) a Disbursement Order; and (B) a United States Treasury Department Form W-9 (or other applicable form or statement specified by Treasury Department regulations) that is properly completed and executed by the individual or entity receiving such proceeds. A "Disbursement Order" means, with respect to a disbursement by the Court Registry of all or part of the Share Consideration or the Option Consideration (as the case may be), an Order of the District Court to which the Shareholders are subject that authorizes and directs the disbursement thereof pursuant to the terms of this Stipulation. An "Additional Order" means an Order of the District Court finding that notice has been given and further finding that such notice (including, without limitation, publication notice) is sufficient to be binding upon any potential claimants asserting any rights (including, without limitation, rights as a holder in due course) in the Share Consideration (in any event, such notice shall, without limitation, include any notice reasonably requested by Cenveo). Any hearing to consider the entry of an Additional Order shall not be held until the later of: (x) the date that is three months after Cenveo shall have been given notice of a hearing with respect thereto; and (y) three months after the closing of the Merger. All costs and expenses relating to or incurred in connection with providing notice as contemplated herein (including, without limitation, any notice that is required by the District Court or reasonably requested by Cenveo) shall be paid by the Trustee.

(b)     On the same day as approval of this Stipulation by the District Court, Cenveo shall deliver to the Trustee by e-mail a copy of the latest versions of the Cadmus "NOBO" list and Cadmus "DTC" list that it has obtained from Cadmus.

2.      <u>Exculpation and Compliance With This Stiplulation</u>.  Neither the Shareholders, nor either of them, nor any individual or entity claiming for or through the Shareholders (or either of them) shall have any claim against Cenveo, Cadmus or the Paying Agent or any of their respective officers, directors, affiliates, representatives, employees, agents, advisors, successors or assigns as a result of the payment of the Share Consideration or the Option Consideration to the Court Registry.  The District Court shall retain jurisdiction to enforce this Section 2 by appropriate sanctions or other relief.

3.      <u>Noninterference and Waiver</u>.  In reliance on the covenants of Cenveo to instruct the Paying Agent and Cadmus regarding, respectively, the Share Consideration and the Option Consideration as set forth in Section 1, the Trustee acknowledges and agrees for himself and on behalf of the Debtors and their bankruptcy estates and all individuals and entities claiming or who may hereafter claim in the right of the Debtors or their bankruptcy estates, including, without limitation, all creditors and other persons claiming through such bankruptcy estates, that (a) Cenveo, Cadmus and the Paying Agent are relying upon this Stipulation in not contesting the TRO and Notice of Levy; and (b) the Trustee will not take any action to hinder, delay or affect the Merger or the exercise of rights that any of Cenveo, Cadmus or the Paying Agent or any of their respective officers, directors, affiliates, representatives, employees, agents, advisors, successors or assigns may have under the Agreement of Merger or the Voting Agreement or to require Cenveo, Cadmus or the Paying Agent or any of their respective officers, directors, affiliates, representatives, employees, agents, advisors, successors or assigns,

including, without limitation, American Stock Transfer & Trust Company, the transfer agent for the common stock of Cadmus (the "Transfer Agent") to take any further actions with respect to the TRO, the Notice of Levy or the Trustee's claims against the Shareholders. Without limiting the Trustee's covenants set forth above in this Section 3, effective upon payment to the Court Registry of the Share Consideration and the Option Consideration, the Trustee, for himself and on behalf of the Debtors and their bankruptcy estates and all persons claiming or who may hereafter claim in the right of the Debtors or their bankruptcy estates, including, without limitation, all creditors and other persons claiming through such bankruptcy estates knowingly waives and releases all rights and claims, if any, he and the Debtors and their estates and all persons claiming or who may hereafter claim in the right of the Debtors or their bankruptcy estates, including, without limitation, all creditors and other persons claiming through such bankruptcy estates might have against Cenvco, Cadmus or the Paying Agent or any of their respective affiliates or representatives, employees, agents or advisors, including, without limitation, the Paying Agent and the Transfer Agent, with respect to the TRO and Notice of Levy if Cenveo and the Paying Agent comply with its obligations in Section 1 of this Stipulation, provided, however, that any rights or claims against the Shareholders are expressly excluded from such waiver and release. It is agreed and acknowledged that, without limitation of the obligations of, and release by, the Trustee as set forth in this Stipulation, the Trustee may take any and all actions not inconsistent herewith in order to prevent any Merger Consideration to be paid to either Shareholder from being paid to the Shareholders (including, without limitation, sending garnishee or other notices to the brokerage firm where the Purico Shares that are not registered i/n/o Purico (IOM) are held) so long as such actions do not (and will not) block, hinder or delay (and are not reasonably expected to block, hinder or delay) the Merger or require any

action on the part of, or payment by, any of the individuals or entities released in the immediately preceding sentence.

4. <u>Authority</u>. Each Party represents that such Party has full authority to enter into and perform this Stipulation and that this Stipulation is binding and enforceable against such Party in accordance with its terms.

5. <u>Drafting</u>. With regard to each and every term and condition of this Stipulation, the Parties understand and agree that the same have or has been mutually negotiated, prepared and drafted, and if at any time the Parties desire or are required to interpret or construe any such term or condition, no consideration will be given to the issue of which Party actually prepared, drafted or requested any term or condition of this Stipulation.

6. <u>Successors and Assigns</u>. The Stipulation shall be binding upon, and inure to the benefit of, the respective predecessors and successors, heirs, executors, administrators, conservators, trustees, agents, representatives, successors, transferees and permitted assigns of the Parties hereto including, but not limited to, any subsequent trustee appointed for the Debtors.

7. <u>Integration</u>. This Stipulation and the Exhibits hereto represent the full and complete agreement between the Parties. Any representations, warranties, promises, or conditions, whether written or oral, not specifically incorporated into this Stipulation, or in any other agreements, instruments, certificates or documents delivered as required or contemplated under this Stipulation, shall not be binding upon the Parties, and each of the Parties acknowledges that, in entering into this Stipulation, it has not relied upon any representation, warranty, promise or condition not specifically set forth in this Stipulation. All other discussions, negotiations, and writings have been and are merged into this Stipulation.

8. <u>Writing Required</u>. This Stipulation may not be modified or amended except by an instrument or instruments in writing signed by each Party. Any Party may, only by an instrument in writing, waive compliance by any other Party with any term or provision hereof on the part of such other Party to be performed or complied with.

9. <u>Severability</u>. The provisions of this Stipulation shall, where possible, be interpreted in a manner necessary to sustain their legality and enforceability. In the event a court of competent jurisdiction determines or deems a provision of this Stipulation void or unenforceable, the remainder of this Stipulation shall remain effective and fully enforceable.

10. <u>Governing Law; Jurisdiction</u>. This Stipulation shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such state. The parties submit to the jurisdiction of the District Court for the Western District of North Carolina with respect to any claims or disputes arising out of this Stipulation.

11. <u>Notices</u>. All notices, requests, demands, and other communication under this Stipulation, shall be in writing and will be delivered by facsimile, electronic mail, or courier service, or mailed, certified with first class postage prepaid as follows:

> If to Trustee: Alan B. Gamza, Esq.
> Moses & Singer LLP
> The Chrysler Building
> 405 Lexington Avenue
> New York, New York 10174-1299
> Facsimile: 917-206-4378
> Email: agamza@mosessinger.com
>
> If to Cenveo: Daniel S. Lubell, Esq.
> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, NY 10004
> Facsimile: 212-422-4726
> Email: lubell@hugheshubbard.com

12. <u>Counterparts and Facsimiles</u>. This Stipulation may be signed in two original counterparts, each of which shall for all purposes be considered an original of this Stipulation. Any signature to this Stipulation provided via electronic transmission of any type shall be deemed by the Parties to constitute an original signature.

[The next page is the signature page]

The Parties have signed this Stipulation and Agreement as of the date first written above.

Langdon M. Cooper, as Trustee

By: *[signature]*
Name:   Langdon M. Cooper
Title:   Trustee

Cenveo, Inc.

By:_____
Name:
Title:

IT IS SO ORDERED.

Dated: Charlotte, North Carolina
March 6, 2007
2:20 p.m. EST

*[signature]*
UNITED STATES DISTRICT COURT

The Parties have signed this Stipulation and Agreement as of the date first written above.

Langdon M. Cooper, as Trustee

By:_____
   Name:
   Title:

Cenveo, Inc.

By: _____
   Name: Timothy Davis
   Title: General Counsel

IT IS SO ORDERED.

Dated: Charlotte, North Carolina
March 6, 2007
2:20 pm. EST

_____
Graham C. Mullen
UNITED STATES DISTRICT COURT